# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RICHARD E. HARTMAN,

*Plaintiff,*

vs.

Case No. 18-cv-01057-EFM-TJJ

SONIC RESTAURANTS, INC.,

*Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Richard Hartman initiated this action on February 21, 2018 against his former employer, Defendant Sonic Restaurants, Inc. ("Sonic"), alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), disability discrimination in violation of the Americans With Disabilities Act ("ADA"), and retaliation in violation of the ADEA and ADA. This matter comes before the Court on Sonic's motion to dismiss. For the reasons stated below, Sonic's Motion to Dismiss Plaintiff's Complaint (Doc. 8) is granted in part and denied in part. Sonic's motion to dismiss is granted with respect to Hartman's ADA claim, and denied with respect to the remaining claims.

# I. Factual and Procedural Background[1]

## A. The Complaint

Hartman was born in 1954, and he has a birth defect in his left ear, leaving the ear deformed with 50% hearing loss. He joined Sonic in July 1999, working there for more than 17 years, until Sonic terminated his employment on January 1, 2017. At the time Sonic fired him, he was 62, and was Sonic's oldest Supervising Partner in the Midwest Region. Hartman is currently retired from the workforce.

Throughout his career, Hartman was promoted numerous times. In December 2006, Hartman was promoted to Director of Operations in Wichita, Kansas. He served in that capacity until July 2011 when he was offered the position of Senior Supervising Partner, where he managed 12 Sonic Drive-Ins and earned a salary of approximately $180,000 per year. His new position was technically a demotion in rank, but Hartman believed it to be more of an opportunity than a demotion, as his salary increased by approximately $75,000 per year.

When Hartman became the Senior Supervising Partner, Jacques Grondin became the new Director of Operations. Grondin was approximately 20 years younger than Hartman, and felt threatened by Hartman's previous experience as Director and stature within the company. Grondin often taunted and ignored Hartman, and even threatened Hartman's compensation.

In December 2013, Sonic replaced Grondin with Doug Scott as Director of Operations in Wichita. During the transition period, Grondin expressed his opinions about Hartman's age and disability issues. When Hartman introduced himself to Scott—who is approximately 10 years

---

[1] The following facts are derived from Hartman's Complaint and his response to Sonic's motion to dismiss. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) ("A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).") (citations omitted).

younger than Hartman—Scott stated that the two were going to have problems. While working together, Scott would pick on Hartman due to his age and the disability in his left ear. Scott would often raise his voice at Hartman, despite the fact that Hartman can still hear reasonably well. Scott would also ridicule Hartman's ability to use a computer and to complete managerial tasks.

In May 2016, Scott was put on a 90-day Personal Improvement Plan ("PIP"). Scott ultimately failed the PIP, and Sonic eliminated Scott's position. On the eve of his termination, however, Scott placed Hartman on a PIP, which started on September 1, 2016. On December 12, 2016, Hartman was notified that he failed the PIP. He was officially terminated without severance pay on January 1, 2017.

On March 20, 2017, Hartman submitted an Intake Questionnaire to the Equal Employment Opportunity Commission ("EEOC") at their Kansas City office. The EEOC's Kansas City office forwarded Hartman's Intake Questionnaire to the EEOC's Oklahoma City office, where it was received on April 3, 2017.

"Due to the EEOC's extensive delays and oversight," Hartman's Charge of Discrimination ("Charge") "was not filed until November 16, 2017." The EEOC issued Hartman his right to sue letter on November 24, 2017, stating that Hartman must file his lawsuit within 90 days of receiving the right to sue letter (notifying Hartman that his lawsuit must be filed by February 22, 2018). "The EEOC acknowledged its oversight in February 2018, and thus, deemed Mr. Hartman's claims timely filed, stating that the date the EEOC's Oklahoma City office received Mr. Hartman's Intake Questionnaire on April 3, 2017 is the action and date that preserves Mr. Hartman's timeliness of filing."

Hartman filed this action on February 21, 2018. In Count I, Hartman brings a claim of discrimination under the ADEA. In Count II, Hartman brings a claim of discrimination under the

ADA. In Count III, Hartman brings a claim of retaliation in violation of the ADEA and ADA. Hartman did not attach any exhibits to the Complaint.

On April 27, 2018, Sonic filed the present motion to dismiss under Fed. R. Civ. P. 12(b)(1). Sonic argues that Hartman failed to timely and fully exhaust his administrative remedies with respect to the Charge forming the basis for his lawsuit, and seeks to have Hartman's lawsuit dismissed.

**B.      Exhibits Attached to Hartman's Response**

Attached to his Response, Hartman included copies of his Charge, emails he and his counsel exchanged with the EEOC, the EEOC's right to sue letter, his Intake Questionnaire, and a photograph of his ear.

*1.       Hartman's Intake Questionnaire*

The Intake Questionnaire was signed by Hartman on March 20, 2017. There is a disclaimer at the top of the first page, which states: "REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination."

In response to Question 2, Hartman indicated that he believed he was discriminated against by his employer, Sonic. Question 4 contains 10 check-boxes to answer "[w]hat is the reason (basis) for your claim of employment discrimination?" Hartman checked two boxes: age, and retaliation. The remaining boxes, including the disability box, were not checked. Hartman handwrote most of his allegations against Sonic in the lines provided for Questions 5–8.

The third page of the Intake Questionnaire explains that Questions 9–12 should be answered "only if you are claiming discrimination based on disability. If not, skip to question 13." Hartman proceeded to fill out questions 9–12. Regarding Question 9, Hartman checked a box

indicating that "Yes, I have a disability." To the side, Hartman handwrote "50% hearing loss due to a birth defect!" Question 10 asks "[w]hat is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything?" Hartman answered: "I have a birth defect which gives me a 50% hearing loss which my last supervisor must have thought I couldn't hear him because he was always yelling at me 'Rich, Rich, Rich, Rich.' "

On the fourth and final page, after the final question the form contains the following message:

> Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination . . . . If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

Box 1 provides: "I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time." And Box 2 provides: "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above." Hartman checked Box 1, leaving Box 2 blank.

Hartman signed and dated the Questionnaire. Below the signature and date lines, the questionnaire contains a Privacy Act Statement. The statement provides, in relevant part: "Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge."

*Hartman's Correspondence With the EEOC*

Exhibit B contains a copy of an email chain between Hartman and Tamra James, a Federal Investigator with the EEOC. The first email was sent from James to Hartman; it does not contain a date. It reads:

Dear Mr. Hartman:

This is in reply to your telephone message on 6/20/17. I am the Federal Investigator assigned to your charge. I have received all the information that you have sent me to file a charge. I will begin the filing process soon. I plan to e-mail you a draft of your charge of discrimination during the week of July 1, 2017. However, this is not a quick process as I am required to work on cases in the date order in which I receive them, and I receive many new ones each week. There are some cases that I have received before I received yours that I must work on before I can work on your case. Therefore, you will not be contacted by me unless or until I have information for you or I need an action or information from you. This doesn't mean that the [sic] I have forgotten about you or your charge, it is just the fact that I have many charges that require the same or similar amount of attention, so that contact and/or communication on each must be limited to make time for my investigation all of them [sic]. Additionally, I prefer to communicate by e-mail. Thank you.

Hartman responded to this email on September 25, 2017. He wrote: "Tamra, excuse me, but I was wondering if you might be able to update me as to where I stand in this investigation! Thank you, Rich." On October 3, 2017, Ms. James replied: "Dear Mr. Hartman, I am working on your charge. I will contact you as needed. Thank you."

Exhibit C contains another copy of an email chain between Hartman and Ms. James. The first email does not include a date, but it was sent by Ms. James to Hartman, explaining:

Attached is your charge of discrimination for your review and signature. If you are unable to down load or open it and print it, let me know and I will mail a hard copy to you. Please review the wording. If you need any corrections, please e-mail me the paragraph number and the wording that you want for that paragraph. You may not change paragraph III as it is standard for the Commission. If you do not need any corrections, please sign it and return it to me by e-mail, fax, or regular mail. Thank you.

Because this email did not include a date, it is unclear what date Hartman first received the charge from the EEOC, but Hartman responded on November 14, 2017. He wrote:

> Tamra, thank you so much for investigating my charge, but since I am not familiar with the process I have a question and a comment.
>
> Question, upon signing this document, does this give me the "right to sue" or is this a formal "official" charge and you are documenting the specifics?
>
> Comment: Doug Scott, my immediate Supervisor was relieved of his position effective August 15th when Alex Marizcurrena was then put into position and became my Supervisor. Doug drove from Kansas City, Missouri to Wichita and met with me at 4:30 pm to deliver the PIP on August 31st. I believe that he did not have the authority to put me on a PIP because he was no longer the Director of Operations at the time. I believe that this additionally shows his mission (even though he had no power to do so) to blatantly discriminate against me to get me out of the company and forcing me into retirement.
>
> [By the way], I was able to print this off, but I did not know if you wanted to add this very significant bit of information. Please let me know!

James's reply was sent on November 16, 2017:

> Attached is your charge of discrimination with the information added that you requested. After I receive the signed charge of discrimination, I will issue the notice of "right to sue" letter to you. Once you receive the notice of right to sue, you must file a suit in Federal Court within 90 days of the date on the notice of right to sue letter. If you do not file a suit within the 90-day period, you will lose your right to sue over this matter.

The EEOC received Hartman's formal Charge, signed and dated on November 16, 2017.

Hartman's right to sue letter (attached to the Response as Exhibit D) was signed by Tamra James for Holly Waldron Cole, the EEOC's Area Office Director on November 24, 2017.

Finally, Exhibit E is an email from Holly Cole to an attorney for each of the parties on February 27, 2018. The email provided:

> Our records show that we received your client's, Richard Hartman, intake questionnaire on April 3, 2017. This is the initial inquiry date with the EEOC as he was contacting us for the purpose of filing a Charge of Discrimination. The 300-day time limit stopped on that day; not on the date the Charge of Discrimination

(Form 5) was signed by him.  It is not unusual for the Form 5 to be drafted and signed on a date later than the initial inquiry date.  We treated Mr. Hartman's charge to be timely filed with the EEOC and processed it accordingly.  Hopefully, this clarifies the issue.  Thank you.

*3.     Hartman's Formal Charge*

Hartman's Charge was signed under penalty of perjury, dated November 16, 2017.  The section indicating what Hartman's discrimination is based on contains 10 checkboxes.  Only two were checked: Retaliation and Age.  The disability box was not checked.  The "particulars" section contained, in relevant part, the following allegations:

> I had never received any below target performance evaluation, no letters of any disciplinary action in my personnel file, or any negative correspondence until Doug Scott became my supervisor in December of 2013.  I suffered harassment from Supervisor, Doug Scott, age 50's frequently.  He often threatened my income and my job.  He made fun of my computer skills.  He made Ageist remarks saying, "Rich, there are new inventions out there called computers", and "I would rather do it himself than take the time to teach you or show you how to do it", inferring that my age made me unfamiliar with computers and slow to learn how to use them.  Also, Supervisor Doug Scott repeated my name loudly, "Rich, Rich, Rich", when he spoke to me as though he thought I could not hear him since I was older.  He treated younger employees better than he treated me.  I complained many times of the harassment and the age discrimination I experienced to Human Resources.  Nothing was done to address my complaints.  In retaliation for my repeated complaints, Supervisor, Doug Scott, placed me on a 90-day [PIP] beginning August 31, 2017. . . I believe that this additionally shows his mission . . . to blatantly discriminate against me to get me out of the company and forcing me into retirement.

Hartman then explained: "I believe that I have been discriminated against because of my age, (62), and retaliated against for my complaints of Age Discrimination, in violation of the Age Discrimination in Employment Act of 1967, as amended.  The Charge indicates that the discrimination took place from December 6, 2013 until January 1, 2017.

## II.    Legal Standard

Sonic seeks to dismiss Hartman's claims under Fed. R. Civ. P. Rule 12(b)(1) for lack of subject matter jurisdiction.  Rule 12(b)(1) motions generally take the form of facial attacks on the complaint or factual attacks on the accuracy of its allegations.[2]  Sonic challenges the face of the complaint, so the Court presumes the accuracy of plaintiff's factual allegations.[3]  "Courts may exercise jurisdiction only when specifically authorized to do so, and must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."[4]  Because federal courts are courts of limited jurisdiction, the law imposes a presumption against jurisdiction.[5]  Hartman bears the burden of showing that jurisdiction is proper, and must demonstrate that the case should not be dismissed.[6]

## III.    Discussion

Sonic now moves to dismiss the Complaint, advancing two arguments.  First, Sonic argues that Hartman failed to timely file the Charge within the 300-day limitation period and therefore this action is time-barred and should be dismissed.  Second, Sonic argues that Hartman failed to exhaust his administrative remedies regarding his ADA claim for alleged disability discrimination, and his disability claim is therefore jurisdictionally barred.  The Court will address each argument in turn.

---

[2] *Id.* at 1002–03 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

[3] *See id.*

[4] *Myers v. United States*, 2013 WL 5596813, at *1 (D. Kan. 2013) (citations and internal quotation marks omitted).

[5] *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999).

[6] *Myers*, 2013 WL 5596813, at *1 (citing *Marcus*, 170 F.3d at 1309; *Jensen v. Johnson Cty. Youth Baseball League*, 838 F. Supp. 1437, 1439–40 (D. Kan. 1993)).

A.      **Timely Filing of a Charge**

A plaintiff must exhaust his administrative remedies before he may file suit under the ADEA or the ADA, and may do so by timely filing a charge with the EEOC.[7]  For Hartman's ADEA and ADA claims to be timely, he must have filed an administrative "charge" within three hundred days after his discharge.[8]  Sonic argues that Hartman did not file a timely Charge, so he did not administratively exhaust his claims, thus his lawsuit is barred.  According to Sonic, the charge was not filed until November 16, 2017, more than 300 days after the last allegedly discriminatory act identified in his charge took place (January 1, 2017).  Hartman counters that his Intake Questionnaire constitutes his charge of discrimination, and that was timely filed with the EEOC on April 3, 2017.

The Supreme Court has resolved two issues directly relevant to this case: "what is a charge as the ADEA uses that term" and was Hartman's Intake Questionnaire "a charge?"[9]  Regarding the first issue, the Court determined that, to be considered a charge, a plaintiff's documents must provide "the information required by the regulations, *i.e.*, an allegation and the name of the charged party," and also "it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."[10]  The Court acknowledged "that under this permissive standard a wide range of

---

[7] *See Riley v. Tulsa Cty. Juvenile Bureau ex rel. Tulsa Cty. Bd. of Comm'rs*, 421 F. App'x 781, 783 (10th Cir. 2010); *EEOC v. Wal-Mart Stores, Inc.*, 1999 WL 1244485, at *3 (10th Cir. 1999).

[8] *See Carson v. Cudd Pressure Control, Inc.*, 299 F. App'x 845, 847 (10th Cir. 2008); *Brown v. Unified Sch. Dist. 501, Topeka Pub. Schs.*, 465 F.3d 1184, 1186 (10th Cir. 2006) (citations omitted); *see also Holmes v. Utah, Dep't of Workforce Servs.*, 483 F.3d 1057, 1061–62 (10th Cir. 2007) (dismissing allegations which did not occur within the 300-day filing period).

[9] *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 395 (2008).

[10] *Id.* at 402.

documents might be classified as charges," but found this result "consistent with the design and purpose of the ADEA," particularly because most charges are filed by laypersons.[11]  The standard would also serve to "separate information requests from enforcement requests."[12]

The Court then resolved the second question in favor of the plaintiff, determining that his completed intake form and the attached affidavit provided all the necessary information and, as construed, amounted to "a request for the agency to act."[13]  The Court concluded that it did not matter that the plaintiff subsequently filed a formal, but untimely, charge.[14]

Before *Holowecki*, the Tenth Circuit held that a document filed with the EEOC constitutes a charge where: (1) the document satisfies the requirements of 29 C.F.R. § 1601.12; (2) "the evidence demonstrated that the complainant sought to activate the EEOC's administrative process;" and (3) "the EEOC treated the document as a charge."[15]  In light of *Holowecki*, however, the Tenth Circuit clarified two points regarding these three factors.  "With respect to the second factor, we must now evaluate whether a filing constitutes a complainant's request for remedial action from an *objective* viewpoint only."[16]  And "[w]ith respect to the third factor, we now make plain that we do not require evidence that the EEOC actually treated a filing as a charge to construe

---

[11] *Id.*

[12] *Id.* at 401.

[13] *Id.* at 405.

[14] *Id.* at 406.

[15] *Semsroth v. City of Wichita*, 304 F. App'x 707, 713 (10th Cir. 2008) (citing *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007)).

[16] *Id.* (citing *Holowecki*, 552 U.S. at 402 ("[T]he filing must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes . . . .")) (emphasis in original).

that document as such."[17] "Instead, the EEOC's subsequent conduct merely informs our determination regarding whether the document can reasonably be construed as a request for agency action."[18]

With this standard in mind, the Court considers whether Hartman's Intake Questionnaire constitutes a charge. First, the Intake Questionnaire contains all five types of information required by § 16.01.12. Second, the Court must determine whether the Intake Questionnaire objectively constitutes a request for remedial action. The Intake Questionnaire, standing alone, cannot reasonably be construed as "a request for the agency to take remedial action" because it contains only factual information about Hartman's allegations of discrimination and makes no requests of the agency.[19] Hartman explicitly checked the box that provides: "I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time." This suggests that the Intake Questionnaire does not constitute a charge.

The Court's inquiry, however, does not end with the responses Hartman provided on the Intake Questionnaire. Like here, the Tenth Circuit in *Semsroth* concluded that, standing alone, the plaintiffs' intake questionnaires "cannot reasonably be construed as 'a request for the agency to take remedial action.' "[20] However, the *Semsroth* Court noted that,

> [a]fter submitting the questionnaires to the EEOC, each plaintiff received one or two letters from the EEOC. These letters informed the [plaintiffs] that they had not

---

[17] *Id.* (citing *Holowecki*, 552 U.S. at 404).

[18] *Id.*

[19] *See id.* (noting that plaintiffs' intake questionnaires "cannot reasonably be construed as 'a request for the agency to take remedial action' because they relate only factual information about the [plaintiffs'] allegations of discrimination and make no requests of the agency") (citation omitted).

[20] *Id.* (citing *HOlowecki*, 552 U.S. at 402).

filed charges as a result of the questionnaires and directed the [plaintiffs] to take additional steps, including contacting the EEOC, if they wished to file a charge. The letters also indicated that if the [plaintiffs] elected to file a charge, "it is likely the case would immediately be closed. A Dismissal/Right-to-Sue document would then be issued to you."[21]

The record indicated that two of the plaintiffs received Right-to-Sue letters. "Given the discourse in the letters from the EEOC as well as the existence of the Right-to-Sue letters," the Tenth Circuit concluded "that as a result of their subsequent actions," those two plaintiffs' intake questionnaires "reasonably constitute[d] charges . . . ."[22] "The letters from the EEOC indicate[d] that the [two plaintiffs] needed to take additional steps to demonstrate the requisite desire to start the EEOC administrative process and that if they did so, the EEOC would likely close their cases and issue Right-to-Sue letters."[23] Thus, the presence of the Right-to-Sue letters suggested that plaintiffs "in fact took the affirmative steps necessary to signal their desire to the EEOC to start its administrative process."[24]

*Semsroth* is instructive here. Although Hartman's Intake Questionnaire, standing alone, cannot reasonably be construed as a request for the EEOC to take action, the surrounding evidence objectively demonstrates that Hartman sought to activate the EEOC's administrative process. Just like two of the plaintiffs in *Semsroth*, Hartman received a right-to-sue letter from the EEOC on November 24, 2017. The presence of Hartman's right-to-sue letter is strong evidence that Hartman

---

[21] *Id.* at 714.

[22] *Id.*

[23] *Id.*

[24] *Id.*

"took the affirmative steps necessary to signal [his] desire to the EEOC to start its administrative process."[25]

Additionally, Hartman's correspondence with the EEOC demonstrates that Hartman sought to activate the EEOC's administrative process after he submitted his Intake Questionnaire. Hartman called and left a message with Tamra James, a Federal Investigator with the EEOC on June 20, 2017. Ms. James replied:

> This is in reply to your telephone message on 6/20/17. I am the Federal Investigator assigned to your charge. I have received all the information that you have sent me to file a charge. I will begin the filing process soon. I plan to e-mail you a draft of your charge of discrimination during the week of July 1, 2017. However, this is not a quick process as I am required to work on cases in the date order in which I receive them, and I receive many new ones each week. There are some cases that I have received before I received yours that I must work on before I can work on your case. Therefore, you will not be contacted by me unless or until I have information for you or I need an action or information from you. This doesn't mean that the [sic] I have forgotten about you or your charge, it is just the fact that I have many charges that require the same or similar amount of attention, so that contact and/or communication on each must be limited to make time for my investigation all of them [sic].

Although the contents of Hartman's June 20 message were not provided to the Court, it is clear that based off this email that Hartman expressed his desire for the EEOC to start its administrative process. This conclusion is further supported by Hartman's September 25, 2017 email response. He wrote: "Tamra, excuse me, but I was wondering if you might be able to update me as to where I stand in this investigation! Thank you, Rich." Ms. James returned his email, telling him that she was working on his charge.

---

[25] *See id.*; *see also Halsey v. U.P.S.*, 2015 WL 73685, at *4 (D. Kan. 2015) (citing *Semsroth*, 304 F. App'x at 714) ("The Tenth Circuit determined that the right-to-sue letters were *strong evidence* that those two plaintiffs took the additional steps directed by the EEOC in the post-questionnaire correspondence, while the lack of a right-to-sue letter for the third plaintiff strongly suggested that she did not take the required additional steps." (emphasis added)).

The Tenth Circuit no longer requires "evidence that the EEOC actually treated a filing as a charge to construe that document as such."[26]  Even so, such evidence was presented in this case. On February 27, 2018, the EEOC Office Director wrote, in an email: "[o]ur records show that we received your client's, Richard Hartman, intake questionnaire on April 3, 2017," and that "[t]his is the initial inquiry date with the EEOC as he was contacting us for the purpose of filing a Charge of Discrimination."  According to the Director, "[t]he 300-day time limit stopped on that day; not on the date the Charge of Discrimination (Form 5) was signed by him."  Thus, the Director noted, "[w]e treated Mr. Hartman's charge to be timely filed with the EEOC and processed it accordingly."

Accordingly, the evidence, including the EEOC's subsequent conduct, objectively demonstrates that the complainant sought to activate the EEOC's administrative process.[27] Hartman's Intake Questionnaire was therefore the operative charge filed with the EEOC.  It was filed on April 3, 2017, well within the 300-day limitation period.  Because Hartman's charge was timely filed, any federal claims that are included within the scope of Hartman's timely allegations are not barred.

**B.     Scope of the Allegations Raised in the EEOC Charge**

Next, Sonic argues that neither the Intake Questionnaire nor the formal charge reference disability discrimination, and therefore Hartman failed to administratively exhaust his disability claim.  Hartman counters that the contents of his Intake Questionnaire, which is the operative

---

[26] *Semsroth*, 304 F. App'x at 713 (citing *Holowecki*, 552 U.S. at 403–04).

[27] *See id.* at 714 ("Here, we consider the EEOC's subsequent conduct only as evidence that [two of the plaintiffs] must have contacted the EEOC subsequent to filing the intake questionnaire to request EEOC action, because the EEOC had advised these two plaintiffs that it would not issue right-to-sue letters to them in the absence of express requests for action.  Accordingly, we conclude that [the two plaintiffs] filed charges with the EEOC.").

charge of discrimination, sufficiently alleges a claim for discrimination based on his deformed ear and hearing loss.

A plaintiff normally may not bring an ADA claim "based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter."[28] "This individual filing requirement is intended to protect employers by giving them notice of the discrimination claims being brought against them, in addition to providing the EEOC with an opportunity to conciliate the claims."[29] "[E]ach discrete incident of [discriminatory or retaliatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."[30] "In the tenth circuit, a plaintiff must exhaust her claims before the EEOC as a prerequisite to federal court jurisdiction over her ADA claims."[31]

Administrative exhaustion is addressed in three steps. First, the Court must analyze whether the document filed with the EEOC constitutes a charge.[32] Second, the Court must "determine which allegations included in the charge, if any, are timely."[33] Third, the Court must "determine whether the federal claims are included within the scope of those timely allegations."[34] Above, the Court concluded that Hartman's Intake Questionnaire is the operative questionnaire, and that the allegations included in the charge are timely. Thus, the issue currently before the

---

[28] *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004) (internal quotation marks omitted).

[29] *Id.* at 1195 (citations omitted).

[30] *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–13 (2002)).

[31] *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) (citations omitted).

[32] *Semsroth*, 304 F. App'x at 712.

[33] *Id.*

[34] *Id.*

Court is whether Hartman's ADA claim is included within the scope of the allegations included in the Intake Questionnaire.

Sonic argues that *Bland v. Kansas City, Kansas Community College*[35] is instructive. There, the plaintiff's intake questionnaire contained allegations to support claims under the ADEA and the ADA.[36] Later, the plaintiff filed a timely charge, on which she marked only the box referencing age discrimination.[37] In the "particulars" section of the charge, she wrote: "I believe that I am being discriminated against because of my age (49) in violation of the [ADEA]."[38] The charge "fail[ed] to mention any claim that might arise under the ADA."[39] Nonetheless, the plaintiff filed suit alleging violations of the ADA.[40] The defendant moved to dismiss the ADA claim on the grounds that the plaintiff failed to exhaust her administrative remedies.[41]

The *Bland* Court ultimately dismissed the disability claim and declined to "reach beyond the body of her charge for exhaustion purposes."[42] In reaching this decision, the court found "that the Tenth Circuit's decision in [*Welsh v. City of Shawnee*], albeit unpublished, strongly suggests that the Circuit would reject plaintiff's reliance on her intake questionnaire for exhaustion purposes."[43] The court explained:

---

[35] 271 F. Supp. 2d 1280 (D. Kan. 2003).

[36] *See id.* at 1284.

[37] *Id.* at 1283.

[38] *Id.* at 1283–84.

[39] *Id.* at 1284.

[40] *Id.* at 1282.

[41] *Id.* at 1283.

[42] *Id.* at 1284.

[43] *Id.* at 1285.

Here, plaintiff's intake questionnaire is not even signed by plaintiff much less signed under oath. The fact that the plaintiff's information sheet in *Welsh* was unverified was a critical component in the Circuit's decision. Thus, the court believes that the Circuit would similarly disregard the intake questionnaire here. Moreover, there is simply no evidence before the court that plaintiff intended the EEOC to investigate the allegations contained in the intake questionnaire. As the Circuit indicated in *Welsh*, while submission of the completed questionnaire itself "may be some indication that at some point she intended [the EEOC] to investigate her [disability discrimination] allegations," her subsequent timely filed formal charge, signed under oath, containing only allegations of age discrimination effectively negated the questionnaire.[44]

Thus, although the plaintiff's intake questionnaire contained allegations supporting an ADA claim, her subsequently-filed formal charge did not, and the court dismissed the plaintiff's ADA claim for failure to exhaust her administrative remedies.[45]

While *Bland* is instructive, the facts of this case are distinguishable. Here, Hartman's Intake Questionnaire is the operative charge, even though a formal, albeit untimely charge was later filed.[46] Although the Intake Questionnaire was not verified,[47] Supreme Court jurisprudence makes clear that verification of the original document does not dictate whether that document can

---

[44] *Id.* (citing *Welsh v. City of Shawnee*, 1999 WL 345597, at *5 (10th Cir. 1999)) (internal citation omitted) (alterations in original).

[45] *See id.*

[46] *Bland* and *Welsh* are distinguishable because in those cases, a formal charge was *timely* filed after the intake questionnaire had been filed. To the extent that *Bland* and *Welsh* can be read to support the conclusion that an *untimely* formal charge can also negate any claims contained in a previously-submitted intake questionnaire, the Court agrees that Hartman's ADA claim would have to be dismissed. Hartman's formal charge clearly did not contain any reference to his disability, so it would negate any disability claim that he raised in the Intake Questionnaire if such a claim was properly raised. *See Green v. JP Morgan Chase Bank Nat'l Assoc.*, 501 F. App'x 727, 731 (10th Cir. 2012) (holding that "it would defeat the statutory scheme to find exhaustion where an employee includes a claim in the intake questionnaire, but then omits it in a timely subsequent formal charge . . . ") (citation omitted).

[47] *See* 42 U.S.C. § 2000e-5 ("Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires."); 29 C.F.R. § 1601.9 (requiring a charge to be in writing, signed, and verified).

be considered a charge because subsequent verification can relate back to the original filing.[48] Thus, the Intake Questionnaire—not the formal charge—told "the EEOC what to investigate," and "provide[d] it with the opportunity to conciliate the claim."[49]

Thus, the Court must "determine the scope of the allegations raised in" the *Intake Questionnaire*, because "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."[50] However, in this case, the Court's analysis is guided by the "discriminatory *acts* alleged in" Hartman's Intake Questionnaire, because it is the operative charge.[51] In other words, the Intake Questionnaire "must contain facts concerning the discriminatory and retaliatory actions underlying each claim."[52]

Sonic argues that an ADA claim is not within the scope of the allegations raised in the Intake Questionnaire, because Hartman only checked the boxes for age and retaliation, and when asked for any other bases of discrimination, he simply wrote: "hostile work environment because of my age." Hartman admits that he failed to mark the "Disability" box on the Intake Questionnaire, but counters that the Intake Questionnaire certainly alleges the pervasive harassment from Hartman's manager Doug Scott relating to his deformed ear. He cites question

---

[48] *See Edelman v. Lynchburg Coll.*, 535 U.S. 106, 113–14 (2002) (concluding that the verification requirement can be cured by a later document that relates back to the original filing). Here, Hartman's formal charge was verified, and it relates back to the operative charge, the Intake Questionnaire.

[49] *Bland*, 271 F. Supp. 2d at 1283 (citing *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997); *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989)).

[50] *Jones*, 502 F.3d at 1185–86 (internal quotation marks and citation omitted).

[51] *See id.* (concluding that the plaintiff's intake questionnaire satisfied the EEOC's requirements for a charge before determining whether the plaintiff exhausted her administrative remedies by analyzing the scope of the allegations raised in the operative charge—the intake questionnaire).

[52] *Id.* at 1186.

9 on the Intake Questionnaire, where he marked the "Yes, I have a disability" box, and handwrote beside that "50% hearing loss due to a birth defect!" He also cites question 10, where he wrote "I have a birth defect which gives me a 50% hearing loss which my last supervisor must have thought I couldn't hear him because he was always yelling at me with 'Rich, Rich, Rich, Rich.' " However, as Sonic points out, Hartman did not include any allegations that Sonic took adverse action against him because of his alleged hearing loss, nor did he request any accommodation from Sonic because of his hearing loss.

"The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box."[53] "The presumption may be rebutted, however, if the text of the charge *clearly* sets forth the basis of the claim."[54] The Court concludes that Hartman has not rebutted this presumption, because the Intake Questionnaire does not contain allegations that Hartman was harassed due to his disability, nor does it contain allegations that Hartman was terminated due to his disability. Hartman simply noted that he had "a 50% hearing loss due to a birth defect," and that his "last supervisor must have thought I couldn't hear him" because he always yelled "Rich, Rich, Rich, Rich." The text of the Intake Questionnaire simply does not contain facts that would prompt an investigation of Hartman's claim that Sonic discriminated against him based off his disability. Hartman did not allege that Sonic discriminated against him because of his disability and his allegations did not go beyond age discrimination. None of the

---

[53] *Id.* (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998)).

[54] *Id.* (citing *Gunnell*, 152 F.3d at 1260) (emphasis added).

allegations in the Intake Questionnaire suggest that Hartman intended to make a disability discrimination claim.[55]

Indeed, it appears that the EEOC, after reviewing the Intake Questionnaire, chose not to investigate a claim for disability discrimination. The EEOC spent months drafting a formal charge for Hartman. When the EEOC eventually submitted the draft to Hartman for his approval, there was no reference to a claim for disability. Rather, the "Disability" box was unchecked on the formal charge, and the "particulars" section provided: "Supervisor Doug Scott repeated my name loudly, 'Rich, Rich, Rich,' when he spoke to me as though he thought I could not hear him since I was older." This also leads the Court to conclude that the text of the Intake Questionnaire does not contain facts that would prompt an investigation of Hartman's disability claim.

Based off the simple allegation in the Intake Questionnaire, an investigation into whether Hartman was discriminated against due to his disability cannot "reasonably be expected to follow." Hartman has therefore failed to exhaust his administrative remedies with respect to his ADA claim. Accordingly, Count II of the Complaint is dismissed.

## IV.    Conclusion

Contrary to Sonic's assertions, Hartman's Intake Questionnaire was the operative charge filed with the EEOC. It was filed on April 3, 2017, well within the 300-day limitation period. Because Hartman's charge was timely filed, any federal claims that are included within the scope of Hartman's timely allegations are not barred. However, only Hartman's ADEA and retaliation claims are included within the scope of his Intake Questionnaire. Accordingly, Hartman's

---

[55] *Cf. Rader v. U.S.D. 259 Wichita Pub. Schs.*, 844 F. Supp. 2d 1206, 1210–11 (D. Kan. 2011) (concluding that nothing in the plaintiff's charge suggests that plaintiff intended to make a national origin claim when plaintiff "did not allege that defendant discriminated against her because of any nation from which her African ancestry may have come and her allegations did not go beyond race").

disability discrimination claim is dismissed for failure to exhaust administrative remedies. The Court denies Sonic's motion as to Hartman's ADEA and retaliation claims.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 8) is **GRANTED IN PART AND DENIED IN PART**.

The motion is granted with respect to Count II (ADA disability discrimination claim). Count II is the only claim that is dismissed.

**IT IS SO ORDERED.**

Dated this 24th day of August, 2018.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE